The PEOPLE of the State of
Colorado, Complainant,

v.

Chistopher Bradley CALBO, Respondent.

Nos. 04PDJ073, 04PDJ088,
04PDJ098, 04PDJ105.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Oct. 3, 2005.

Attorney Regulation. Following a sanctions hearing, the Presiding Disciplinary Judge disbarred Respondent Christopher Bradley Calbo (Attorney Registration No. 29149) from the practice of law, effective November 3, 2005. The Court also ordered Respondent to pay restitution and the costs incurred in conjunction with these proceedings. The facts admitted through the entries of default showed Respondent knowingly converted several thousands of dollars in client funds and knowingly failed to perform services for several clients. Respondent's conduct caused serious harm to his clients. The admitted facts proved numerous rule violations including Colo. RPC 1.3, 1.4(a), 1.16(d), 3.4(c), 5.5(a), 8.1(b), 8.4(c), and 8.4(d). Respondent failed to participate or present any mitigating evidence in these proceedings. Accordingly, the Court found no adequate basis to depart from the presumptive sanction of disbarment.

On August 4, 2005, WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("the Court"), held a Sanctions Hearing pursuant to C.R.C.P. 251.18(d). Cynthia D. Mares appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Christopher Bradley Calbo ("Respondent") did not appear, nor did counsel appear on his behalf. The Court issues the following Report, Decision, and Order Imposing Sanctions:

## REPORT, DECISION, AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.15(b)

### SANCTION IMPOSED: ATTORNEY DISBARRED

### I. ISSUE

Disbarment is generally an appropriate sanction when a lawyer knowingly converts client property, or knowingly fails to perform services and engages in a pattern of neglect, which causes serious or potentially serious injury to his clients. Respondent knowingly converted several thousands of dollars in client funds, knowingly failed to perform services for several clients, and failed to present any evidence to mitigate his misconduct. Is the presumptive sanction of disbarment appropriate under these circumstances?

### II. BACKGROUND

Respondent failed to participate in these consolidated [1] proceedings, and the Court granted the People's Motions for Default on October 15, 2004, December 10, 2004, and January 31, 2005. Upon the entry of a default, all facts in the Complaint are deemed admitted and all rule violations in the Complaint are deemed established. *People v. Richards*, 748 P.2d 341, 346 (Colo.1987). At the Sanctions Hearing, the People presented a record of their efforts to locate Respondent, which included a statewide search of the county jails.[2]

The factual background in this case is fully detailed in the Complaints, which are hereby adopted and incorporated by reference.[3] Respondent essentially failed to meet his professional responsibilities in twelve separate client matters. Respondent engaged in very serious misconduct that included neglect, failure to communicate, knowing violation of court orders, failure to return client files and retainer, conduct prejudicial to the administration of justice, conversion, abandonment of clients, and failure to cooperate in these disciplinary proceedings.

The facts admitted through the entry of default in these cases constitute multiple violations of Colo. RPC 1.3 (neglect of a client matter); Colo. RPC 1.4(a) (failure to keep a client reasonably informed about the status of a matter); Colo. RPC 1.16(d) (failure upon termination of representation to take steps to the extent reasonably practicable to protect a client's interests); Colo. RPC 3.4(c) (knowing failure to comply with a court order); Colo. RPC 5.5(a) (practicing law in violation of the regulations of the legal profession); Colo. RPC 8.1(b) (knowing failure to respond reasonably to a lawful demand for information from a disciplinary authority) and Colo. RPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation); Colo RPC 8.4(d) (conduct prejudicial to the administration of justice).

### III. SANCTIONS

 The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client under ABA *Standard* 4.11. Disbarment is also generally appropriate when a lawyer knowingly fails to perform services or engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client under ABA *Standard* 4.41. Therefore, disbarment is the presumptive sanction for Respondent's misconduct in this case.[4] The

1. On November 29, 2004, the Court granted the People's Motion to Consolidate 04PDJ088 with 04PDJ073, and Motion to Consolidate 04PDJ098 with 04PDJ073. On December 10, 2004, the Court granted the People's Motion to Consolidate 04PDJ105 with 04PDJ073.

2. The People offered Exhibits 9–13 (pending criminal complaints against Respondent, including one class 3 felony) to demonstrate the People's efforts to locate and once again advise Respondent of his right to participate in these proceedings. Although it may be argued that this evidence shows a pattern of misconduct,

the conduct alleged in these complaints is not related to the allegations set forth in the consolidated complaints. The Court will not consider this evidence of aggravation under ABA *Standard* 9.3. The allegations in the consolidated complaints are alone sufficient to warrant disbarment.

3. The consolidated Complaints are attached to this Report as Exhibit A.

4. Since disbarment is the presumptive sanction based upon Respondent's knowing conversion and neglect of multiple clients, the Court deems

Court must also, however, examine the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

Respondent's failure to participate in these proceedings in a meaningful way leaves the Court with no other option but to consider only the allegations and rule violations set forth in the Complaints in evaluating the factors listed above. The Court finds Respondent breached his duties to his clients, the public, and the legal profession. The entry of default in these cases establish Respondent's knowing mental state when he converted funds entrusted to him by clients, and a knowing failure to perform services and pattern of neglect with respect to client matters. Finally, the facts established by the entry of default in these cases also support a finding of actual and potential harm to Respondent's clients and the legal profession.

The People allege several aggravating factors including dishonest or selfish motive, a pattern of misconduct, multiple offenses, and indifference to making restitution to most clients. Due to an absence of evidence to the contrary, the Court finds clear and convincing evidence of these aggravating factors. It may be fairly presumed Respondent used client funds for his own purposes, failed his professional duties to multiple clients, and engaged in a pattern of neglect, deceit, and abandonment. In support of these allegations, the People offered statements from two former clients. The first client lost decision-making in a child custody case, and the second client suffered a $67,000.00 default judgment as a result of Respondent's negligence and abandonment. Finally a representative of the Client Protection Fund testified this fund paid $20,500.00 in claims to Respondent's abandoned clients for unearned retainers.

The People also offered that they were prepared to negotiate a sanction short of disbarment with Respondent if he would make restitution to his former clients and complete a drug rehabilitation program. Although Respondent apparently received funds from his federal court appointment

work in an amount sufficient to pay restitution to his former clients, he did not do so.

Respondent's failure to appear at the Sanction Hearing precluded significant evidence of mitigating factors. The Court notes, however, that Respondent does not have a prior disciplinary record, and the People offer that Respondent cooperated with them to the limited extent that he attended and completed a drug rehabilitation program.

▮ Colorado Supreme Court case law applying the ABA *Standards* holds disbarment is the presumptive sanction for conversion of client funds. Knowing conversion or misappropriation of client money "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *People v. Varallo*, 913 P.2d 1, 11 (Colo.1996) (quoting *In re Noonan*, 102 N.J. 157, 506 A.2d 722, 723 (1986)). Neither the lawyer's motive in taking the money, nor the lawyer's intent regarding whether the deprivation is temporary or permanent, are relevant for disciplinary purposes. *Id.* at 10–11. Significant mitigating factors may overcome the presumption of disbarment, however, none are presented in this case. *See In re Fischer*, 89 P.3d 817 (Colo.2004).

Disbarment is also considered an appropriate sanction in cases involving a lawyer who knowingly fails to perform services and engages in a pattern of neglect. In *People v. Murray*, 887 P.2d 1016 (Colo.1994), the Supreme Court determined that knowing failure to perform services for clients in ten separate matters constituted a pattern of neglect. As a result, and because the attorney caused potentially serious harm to the clients, the Supreme Court disbarred the attorney. *See also People v. Williams*, 845 P.2d 1150 (Colo.1993) (disbarment warranted when lawyer neglects legal matter, fails to return client's retainer, evades service of process, fails to respond to request for investigation, and abandons practice).

## IV. CONCLUSION

▮ One of the primary goals of our disciplinary system is to protect the public from

*it unnecessary to discuss in detail the other rule* *violations contained in the Complaints.*

lawyers who pose a danger to them. The facts established in the Complaints reveal the serious danger Respondent poses to the public. Abandoning clients and converting client funds warrants serious discipline. Absent extraordinary factors in mitigation not presented here, the ABA *Standards* and Colorado Supreme Court case law applying the ABA *Standards* both support disbarment. Thus, upon consideration of the nature of Respondent's misconduct, his mental state, the significant harm and potential harm caused, and the absence of mitigating factors, the Court concludes there is no justification for a sanction short of disbarment.

## V. ORDER

It is therefore ORDERED:

1. CHRISTOPHER BRADLEY CALBO, attorney registration number 29149, is **DISBARRED** from the practice of law, effective thirty-one (31) days from the date of this Order, and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado.

2. CHRISTOPHER BRADLEY CALBO **SHALL** reimburse the Colorado Attorneys' Fund for Client Protection $20,500.00, and pay restitution to any unpaid clients including Ron Phinney ($3,000.00).

3. CHRISTOPHER BRADLEY CALBO **SHALL** pay the costs of this proceeding. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days within which to respond.

### EXHIBIT A

COURT USE ONLY

Case Number: 04PDJ073

Kim E. Ikeler, # 15590, Assistant Regulation Counsel, John S. Gleason, # 15011, Regulation Counsel, Attorneys for Complainant, 600 17th Street, Suite 200–South Denver, Colorado 80202.

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on January 12, 1998, and is registered upon the official records of this court, registration no. 29149. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 12356 W. Nevada Place, # 303, Lakewood, CO 80228.

### General Allegations—Phinney Matter

2. In May 2002, Phinney was charged in Adams County with possession of a controlled substance. The case was styled *People v. Ronnie Lee Phinney*, Adams County District Court, case no. 02CR1320 (the "Adams County case"). A Public Defender was appointed to represent him. Phinney pled not guilty.

3. The case was set for trial in February 2003. In December, Phinney hired respondent to represent him. Phinney claims to have paid respondent $3,000 related to the Adams County case. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct.

4. Respondent entered his appearance on December 13, 2002, substituting for the Public Defender. A motions hearing was set for January 14th. Respondent appeared on that date but Phinney did not. A warrant was issued for Phinney's arrest. Judge Ensor vacated the trial.

5. In January 2003, Phinney was charged in Denver with first-degree murder and related offenses. The case was styled *People v. Ronnie L. Phinney*, Denver District Court, case no. 03CR609 (the "Denver case"). Phinney entered a plea of not guilty on February 24, 2003. At the time, he was represented by the Public Defender. Phinney was held in custody.

6. Phinney moved *pro se* to dismiss the Public Defender in the Denver case. In May 2003, respondent appeared on Phinney's behalf. Phinney waived speedy trial. Judge Mullins set trial for October. In October, respondent moved to continue the trial. Trial was rescheduled for February 2004. In February, trial was continued until March. During this time, Phinney remained in custody.

7. In January 2004, Phinney was again brought before Judge Ensor for a trial setting in the Adams County case. He told the Judge that respondent was his counsel. The court attempted to contact respondent, but was unsuccessful. The matter was scheduled for setting of trial on February 12, 2004. Phinney appeared on that date, but respondent did not. Phinney told the Judge that he had spoken with respondent, who said he was sick, but that he would attend. The court removed respondent as Phinney's counsel and reappointed the Public Defender.

8. Judge Ensor then issued a contempt citation to respondent, returnable March 15, 2004. However, the Sheriff failed to timely serve the citation upon respondent. Because of this, the court took no action at the show cause hearing.

9. In the Denver case, Phinney communicated to Judge Mullins in March 2004, a desire to fire respondent as his counsel. Judge Mullins granted the motion and the Public Defender was again appointed to represent Phinney. The Judge set a motions hearing for May and trial for July.

10. Phinney complained to the Office of Attorney Regulation Counsel ("OARC"). On March 8, 2004, on April 9, 2004, and on April 23, 2004, OARC wrote to respondent at his registered business address concerning Phinney's request for investigation. Respondent did not respond.

11. On May 7, 2004, OARC again wrote to respondent at a new address. Respondent's message on his voice message gave this new address. This address was confirmed by an Internet search. Respondent did not respond.

12. On May 20, 2004, OARC sent a copy of the request for investigation to respondent at his new address by certified mail. The mailing was returned unclaimed.

13. On June 4th, undersigned counsel attempted to contact respondent by telephone. His work number was not in service. His cell phone voice mail was full. Undersigned counsel left a message on respondent's home phone asking him to call. Respondent did not respond. On June 11th, undersigned counsel made the same calls with the same result.

14. On June 15th, undersigned counsel again attempted to reach respondent at home. A woman answered and said she was on the other line with respondent and that she would have him call. Respondent called undersigned counsel. Respondent said he is going through a "rough divorce", that he has been depressed, that he is in therapy and is taking anti-depressant medication. Undersigned counsel told respondent that he must respond to the request for investigation, including by explaining psychological difficulties he is experiencing. Respondent promised to do so within 10 days. He did not.

15. Phinney was potentially injured by respondent's conduct. If Phinney is acquitted in the Denver case, he will have spent months of additional time in jail because of respondent's neglect of the Denver case.

16. Phinney claims that respondent has not returned to him important evidence, including letters from witnesses, the victim and the victim's family. Respondent also has not returned Phinney's $3,000 retainer for the Adams County case.

### CLAIM I

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]

17. Paragraphs 1 through 16 are incorporated herein as if fully set forth.

18. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

19. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects. Respondent failed to appear on February 12, 2004 before Judge Ensor in the Adams County case, despite the court's having called him and despite respondent's having promised Phinney that he would be there. Respondent also failed to take action in the Denver case. Other than requesting a bond reduction (which was denied), respondent filed no motions in the Denver case during the approximately ten months that respondent represented Phinney. The only other requests respondent made were to continue the trial. Respondent failed to conduct a proper investigation: respondent failed to interview important witnesses or visit the crime scene, and failed to have an investigator do these things. As a result of respondent's neglect, Phinney may have unnecessarily spent months in prison.

20. The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

21. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

22. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

23. The respondent's pattern and practice of failing to accomplish his/her professional tasks for the client, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

24. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM II

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information— Colo. RPC 1.4(a) ]**

25. Paragraphs 1 through 16 are incorporated herein as if fully set forth.

26. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

27. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respect. Respondent failed to communicate with Phinney about the case, other than to ask for more money.

28. The respondent knew or should have known that he had failed to communicate adequately with his client over an extended period of months.

29. The respondent's pattern and practice of failing to communicate with the client caused injury or potential injury to the client.

30. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

31. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM III

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

32. Paragraphs 1 through 16 are incorporated herein as if fully set forth.

33. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

34. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

35. The respondent failed to give the client notice that he had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

36. Respondent (according to Phinney) has not turned over to Phinney important evidence. Respondent also has kept Phinney's $3,000 retainer, all or a portion of which is unearned.

37. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM IV

[An Attorney Shall Respond to a Request By the Regulation Counsel for Information Necessary to Carry Out the Performance of Regulation Counsel's Duty—C.R.C.P. 251.5(d); A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c); A Lawyer Shall Not Knowingly Fail to Respond Reasonably to a Lawful Demand for Information From a Disciplinary Authority—Colo. RPC 8.1(b) ]

38. Paragraphs 1 through 16 are incorporated herein.

39. C.R.C.P. 251.5(d) requires that an attorney respond to a request by the Attorney Regulation Counsel for information to carry out the performance of its duties.

40. The respondent failed to respond to repeated attempts by the Office of Attorney Regulation Counsel for information from the respondent.

41. The respondent knew or should have known that he was failing to cooperate and respond to the request by Attorney Regulation Counsel.

42. By such conduct, the respondent violated C.R.C.P. 251.5(d).

43. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

44. As an attorney licensed to practice law in the state of Colorado, the respondent knew or is presumed to know of the obligation to respond to a request by the Attorney Regulation Counsel as set forth in C.R.C.P. 251.5(d).

45. Nevertheless the respondent knowingly disobeyed such obligation, and made no open refusal to obey that was based on an assertion that no valid obligation existed.

46. By such conduct, the respondent violated Colo. RPC 3.4(c).

47. Colo. RPC 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

48. The respondent knowingly violated the rule by failing to respond to the lawful demands for information made by Attorney Regulation Counsel during the investigation of the subject matter of this disciplinary proceeding. Respondent has failed to respond to the above-described request for investigation, despite OARC's having sent him letters, through both regular and certified mail, despite undersigned counsel having phoned him several times, and despite his having promised to do so.

49. The information sought did not require disclosure of information otherwise protected by Colo. RPC 1.6.

50. The respondent made no good faith challenge to the demand by Attorney Regulation Counsel for such information.

51. By such conduct, the respondent violated Colo. RPC 8.1(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM V

**[A Lawyer Shall Not Engage In Conduct That Is Prejudicial to the Administration of Justice—Colo. RPC 8.4(d) ]**

52. Paragraphs 1 through 16 are incorporated herein as if fully set forth.

53. Colo. RPC 8.4(d) provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

54. Respondent's failure to defend the Adams County case, including by failing to appear in court on February 12, 2004, required the district court to enter a contempt citation and then to hold a show cause hearing on March 15, 2004. The district court was thereby inconvenienced and its time was wasted.

55. Such failure to attend interfered with the ebb and flow of the procedures and the function of the court.

56. By such conduct, the respondent violated Colo. RPC 8.4(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### General Allegations—Wynne Matter

57. Julie Ann Wynne ("Julie") filed for divorce from Claude Wynne in April 2003. The case was styled *In re the Marriage of Julie Ann Wynne and Claude Earl Wynne III*, Jefferson County District Court, Case No. 03DR892. Claude retained respondent and paid him $2,500. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct. Respondent filed a Response to the Petition in May. Temporary Orders were entered in July.

58. In January 2004, Mona Goodwin, Julie's counsel, filed a motion for issuance of a contempt citation. The court issued the contempt citation on January 12. On January 30, Ms. Goodwin filed a motion to compel disclosures and discovery. Ms. Goodwin wanted basic financial information, including concerning Claude's retirement monies.

59. On February 6, 2004, the court ordered Claude to make disclosures and provide discovery no later than February 9. The court awarded Julie her attorneys fees incurred in her attempts to obtain disclosures and discovery, in an amount to be determined at the permanent orders hearing. On February 9th, the court continued the permanent orders hearing based on the parties' stipulation to do so.

60. At about the same time, Claude was served with the contempt citation. He failed to appear for the return date on March 11, 2004. A bench warrant was issued and Claude was picked up on the warrant. Claude then hired new counsel.

61. Claude claims that respondent failed and refused to communicate with or meet with him, failed to provide documents to Julie's counsel, did not take steps to prevent the issuance of the contempt citation or handle the contempt citation once it was issued, and did not send Claude any billing statements.

62. Claude filed his request for investigation on May 4, 2004. On May 10, OARC requested that respondent respond. On June 2, 2004, OARC sent the request for investigation to respondent by certified mail. Respondent has not responded. On June 7, undersigned counsel attempted to send the request for investigation to respondent via telecopier, but the transmission was not accepted. On June 8, undersigned counsel left a message to call back on respondent's cell phone. Undersigned counsel called respondent's work number, but it was disconnected. On June 11, undersigned counsel again called respondent's cell phone; respondent did not answer.

63. On June 15, undersigned counsel called respondent's home phone number and talked with a woman there. She said she would have respondent call. Respondent called undersigned counsel. Respondent

said he is going through a "rough divorce", that he has been depressed, that he is in therapy and is taking anti-depressant medication. Undersigned counsel told respondent that he must respond to the request for investigation, including by explaining psychological difficulties he is experiencing. Respondent promised to respond to the request for investigation within 10 days. He did not. On June 24, undersigned counsel again attempted to reach respondent on his cell phone; the voice-mail was full.

## CLAIM VI

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

64. Paragraphs 57 through 63 are incorporated herein as if fully set forth.

65. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

66. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects. Respondent neglected Claude's divorce case, including by failing to cooperate in discovery and failing to transmit to Julie's counsel, Ms. Goodwin, basic financial information. As a result, the divorce court awarded attorney's fees to Julie and issued a contempt citation and then a warrant for Claude's arrest. Claude was required to engage new counsel to sort out these problems.

67. The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

68. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

69. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

70. The respondent's pattern and practice of failing to accomplish his/her professional tasks for the client, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

71. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM VII

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]**

72. Paragraphs 57 through 63 are incorporated herein as if fully set forth.

73. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

74. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respect. Respondent failed and refused to communicate with Claude and to meet with him about the case.

75. The respondent knew or should have known that he had failed to communicate adequately with his client over an extended period of months.

76. The respondent's pattern and practice of failing to communicate with the client caused injury or potential injury to the client.

77. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of

the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

78. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM VIII

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

79. Paragraphs 57 through 63 are incorporated herein as if fully set forth.

80. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

81. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

82. The respondent failed to give the client notice that he had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

83. Respondent (according to Claude) has not turned over the file to Claude's successor counsel. Respondent also has kept Claude's $2,500 retainer, all or a portion of which is unearned.

84. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM IX

**[An Attorney Shall Respond to a Request By the Regulation Counsel for Information Necessary to Carry Out the Performance of Regulation Counsel's Duty—C.R.C.P. 251.5(d); A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c); A Lawyer Shall Not Knowingly Fail to Respond Reasonably to a Lawful Demand for Information From a Disciplinary Authority—Colo. RPC 8.1(b) ]**

85. Paragraphs 57 through 63 are incorporated herein.

86. C.R.C.P. 251.5(d) requires that an attorney respond to a request by the Attorney Regulation Counsel for information to carry out the performance of its duties.

87. The respondent failed to respond to repeated attempts by the Office of Attorney Regulation Counsel for information from the respondent.

88. The respondent knew or should have known that he was failing to cooperate and respond to the request by Attorney Regulation Counsel.

89. By such conduct, the respondent violated C.R.C.P. 251.5(d).

90. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

91. As an attorney licensed to practice law in the state of Colorado, the respondent knew or is presumed to know of the obligation to respond to a request by the Attorney Regulation Counsel as set forth in C.R.C.P. 251.5(d).

92. Nevertheless the respondent knowingly disobeyed such obligation, and made no open refusal to obey that was based on an assertion that no valid obligation existed.

93. By such conduct, the respondent violated Colo. RPC 3.4(c).

94. Colo. RPC 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

95. The respondent knowingly violated the rule by failing to respond to the lawful demands for information made by Attorney Regulation Counsel during the investigation of the subject matter of this disciplinary proceeding. Respondent has failed to respond to the above-described request for investigation, despite OARC's having sent him letters, through both regular and certified mail, despite undersigned counsel having phoned him several times, and despite his having promised to do so.

96. The information sought did not require disclosure of information otherwise protected by Colo. RPC 1.6.

97. The respondent made no good faith challenge to the demand by Attorney Regulation Counsel for such information.

98. By such conduct, the respondent violated Colo. RPC 8.1(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### General Allegations—ARC Matter

99. In September 2003, Jason D. Fittje ("Fittje") was charged with trespassing, assault and harassment. The case was styled *People v. Jason Dean Fittje*, Douglas County District Court, case no. 03CR553 (the "assault case"). Fittje retained respondent, who appeared at several hearings between September and December. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct.

100. In December 2003, Fittje was charged with possession of a controlled substance. The case was styled *People v. Jason Dean Fittje*, Douglas County District Court, case no. 03CR735 (the "drug case"). Fittje retained respondent on this case as well. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance

with the Colorado Rules of Professional Conduct.

101. In February 2004, respondent failed to appear at a motions hearing in the assault case. The Minute Order states: "DEFT. PRO SE (COUNSEL HAS ILL CHILDREN AND NOT ABLE TO APPEAR)". The Deputy District Attorney and respondent spoke by telephone; respondent confessed the prosecution's motion.

102. A disposition hearing was held March 26, 2004, in the drug case. Fittje was present; respondent was not. Fittje told the court that respondent was unable to be present but would like to continue the case.

103. In April 2004, arraignment/disposition hearings were held in the assault case and the drug case. Respondent did not appear. Instead, another attorney appeared with Fittje. The assault case and the drug case were reset for a joint disposition hearing on May 3, 2004.

104. Respondent failed to appear for the May 3, 2004 joint disposition hearing in the assault case and the drug case. Judge Thomas Curry called respondent and asked him why he was not there. Respondent told Judge Curry that he had been notified of the hearing but had failed to write down the date. Judge Curry confirmed with respondent that the disposition hearing was being continued until May 17, 2004. Respondent assured the Judge he would be present.

105. Respondent failed to appear on May 17 as well. Respondent left a message with Judge Curry's staff that he was in Jefferson County that morning. The court's staff called the division of the Jefferson County District Court where respondent supposedly was required to appear. The clerk of that division told Judge Curry's staff that respondent's client had posted a bond on May 12 and been given a return date of May 17. However, this was after respondent had agreed he would appear before Judge Curry on May 17. As of June 3, respondent had not contacted Judge Curry's division to discuss further his failure to appear or what he intends to do with regard to his obligation to represent Mr. Fittje.

106. Subsequently, Fittje waived his right to counsel and agreed to proceed *pro se.* Fittje told Judge Curry that he could not afford to hire new counsel because he had used his available funds to pay respondent.

107. On June 8, 2004, OARC sent the request for investigation to respondent. The registered mail was accepted by someone at respondent's current business address on June 9. Respondent has not responded.

108. On June 11, undersigned counsel attempted to contact respondent by telephone. Respondent's work number was disconnected. The home number was busy.

109. On June 15, undersigned counsel spoke briefly with respondent. Respondent said he had been going through a "rough divorce", that he was in therapy and taking anti-depressant medication. Respondent promised to provide a response to the request for investigation within ten days. Respondent did not do so.

### CLAIM X

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]

110. Paragraphs 99 through 109 are incorporated herein as if fully set forth.

111. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

112. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects. Respondent neglected Fittje's criminal cases, including by failing to appear for the May 3rd and May 17th hearings.

113. The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

114. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

115. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

116. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XI

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

117. Paragraphs 99 through 109 are incorporated herein as if fully set forth.

118. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

119. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

120. The respondent failed to give the client notice that he had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

121. Respondent has kept Fittje's retainer, all or a portion of which is unearned.

122. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XII

[An Attorney Shall Respond to a Request By the Regulation Counsel for Information Necessary to Carry Out the Performance of Regulation Counsel's Duty—C.R.C.P. 251.5(d); A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c); A Lawyer Shall Not Knowingly Fail to Respond Reasonably to a Lawful Demand for Information From a Disciplinary Authority—Colo. RPC 8.1(b) ]

123. Paragraphs 99 through 109 are incorporated herein.

124. C.R.C.P. 251.5(d) requires that an attorney respond to a request by the Attorney Regulation Counsel for information to carry out the performance of its duties.

125. The respondent failed to respond to repeated attempts by the Office of Attorney Regulation Counsel for information from the respondent.

126. The respondent knew or should have known that he was failing to cooperate and respond to the request by Attorney Regulation Counsel.

127. By such conduct, the respondent violated C.R.C.P. 251.5(d).

128. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

129. As an attorney licensed to practice law in the state of Colorado, the respondent knew or is presumed to know of the obligation to respond to a request by the Attorney Regulation Counsel as set forth in C.R.C.P. 251.5(d).

130. Nevertheless the respondent knowingly disobeyed such obligation, and made no open refusal to obey that was based on an assertion that no valid obligation existed.

131. By such conduct, the respondent violated Colo. RPC 3.4(c).

132. Colo. RPC 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

133. The respondent knowingly violated the rule by failing to respond to the lawful demands for information made by Attorney Regulation Counsel during the investigation of the subject matter of this disciplinary proceeding. Respondent has failed to respond to the above-described request for investigation, despite OARC's having sent it to him by certified mail, despite undersigned counsel having phoned him several times, and despite his having promised to respond.

134. The information sought did not require disclosure of information otherwise protected by Colo. RPC 1.6.

135. The respondent made no good faith challenge to the demand by Attorney Regulation Counsel for such information.

136. By such conduct, the respondent violated Colo. RPC 8.1(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### General Allegations—Mason Matter

137. Mason is currently serving a twelve-year term in the Department of Corrections for first-degree murder. His case is styled *People v. Thomas Mason,* Denver District Court, case no. 98CR2036. Thomas filed an appeal in Fall 2002. In May 2004, the Court of Appeals affirmed in part, reversed in part and remanded to Denver District Court with direction to hold a hearing. Mason sought counsel to assist with the hearing.

138. On early May, Mason twice met with respondent at Mason's present place of incarceration. Mason turned over to respondent Mason's file of the case and a personal item. Mason retained respondent, signing a retainer agreement. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct. Mason executed a $5,000 check to respondent; his wife delivered the check to respondent. Respondent cashed the check, apparently at Mason's bank.

139. Thereafter, Mason had difficulty contacting respondent. Respondent prom-

ised to visit but did not. Mason asked respondent whether he had entered his appearance; respondent said that he had. Mason did not believe this, because Mason's friend had checked the court file and no entry of appearance was there.

140. Mason terminated respondent's services. Mason demanded that respondent return his files, his personal item and his $5,000. Respondent promised to do so, but did not. Mason tried to call respondent, without success. Mason wrote to respondent, asking for return of his file and money. Mason's wife went by respondent's home/office, but was only able to speak with the babysitter. Finally, in early June, Mason spoke to respondent. Mason told respondent he would be filing a grievance. Respondent has not communicated with Mason since.

141. Mason filed his request for investigation on June 10. The next day, OARC sent a copy of the request for investigation to respondent. Respondent has not responded. On June 15, undersigned counsel spoke with respondent. As reported above, respondent said he was going through a difficult time and promised to provide a response within ten days. He failed to do so.

### CLAIM XIII

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

142. Paragraphs 137 through 141 are incorporated herein as if fully set forth.

143. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

144. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects. Respondent neglected Mason's criminal case, including by failing to enter his appearance and to prepare for the upcoming hearing.

145. The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

146. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

147. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

148. The respondent's pattern and practice of failing to accomplish his/her professional tasks for the client, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

149. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XIV

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]**

150. Paragraphs 137 through 141 are incorporated herein as if fully set forth.

151. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

152. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects. After respondent obtained Mason's retainer payment, respondent failed and refused to meaningfully communicate with Mason, to timely return

Mason's calls, and to meet with him about the case.

153. The respondent knew or should have known that he had failed to communicate adequately with his client over an extended period of months.

154. The respondent's pattern and practice of failing to communicate with the client caused injury or potential injury to the client.

155. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

156. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XV

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

157. Paragraphs 137 through 141 are incorporated herein as if fully set forth.

158. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

159. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

160. The respondent failed to give the client notice that he had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

161. Respondent has kept Mason's retainer, all or a portion of which is unearned. Respondent also has failed to return Mason's file and the personal item.

162. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XVI

[An Attorney Shall Respond to a Request By the Regulation Counsel for Information Necessary to Carry Out the Performance of Regulation Counsel's Duty—C.R.C.P. 251.5(d); A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c); A Lawyer Shall Not Knowingly Fail to Respond Reasonably to a Lawful Demand for Information From a Disciplinary Authority—Colo. RPC 8.1(b) ]

163. Paragraphs 137 through 141 are incorporated herein.

164. C.R.C.P. 251.5(d) requires that an attorney respond to a request by the Attorney Regulation Counsel for information to carry out the performance of its duties.

165. The respondent failed to respond to repeated attempts by the Office of Attorney Regulation Counsel for information from the respondent.

166. The respondent knew or should have known that he was failing to cooperate and respond to the request by Attorney Regulation Counsel.

167. By such conduct, the respondent violated C.R.C.P. 251.5(d).

168. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

169. As an attorney licensed to practice law in the state of Colorado, the respondent knew or is presumed to know of the obligation to respond to a request by the Attorney Regulation Counsel as set forth in C.R.C.P. 251.5(d).

170. Nevertheless the respondent knowingly disobeyed such obligation, and made no open refusal to obey that was based on an assertion that no valid obligation existed.

171. By such conduct, the respondent violated Colo. RPC 3.4(c).

172. Colo. RPC 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority.

173. The respondent knowingly violated the rule by failing to respond to the lawful demands for information made by Attorney Regulation Counsel during the investigation of the subject matter of this disciplinary proceeding. Respondent has failed to respond to the above-described request for investigation, despite OARC's having sent it to him by certified mail, despite undersigned counsel having phoned him, and despite his having promised to respond.

174. The information sought did not require disclosure of information otherwise protected by Colo. RPC 1.6.

175. The respondent made no good faith challenge to the demand by Attorney Regulation Counsel for such information.

176. By such conduct, the respondent violated Colo. RPC 8.1(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XVII

**[A Lawyer Shall Not Engage in Conduct Involving Dishonesty, Fraud, Deceit or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]**

177. Paragraphs 137 through 141 are incorporated herein as if fully set forth.

178. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

179. Respondent cashed Mason's $5,000 check before performing work for Mason with a value of $5,000.

180. The respondent did not have the consent of the client to use the funds for his own purposes, or any other purpose other than this client's purpose.

181. Through the unauthorized exercise of dominion or ownership over client funds as described above, the respondent knowingly converted or misappropriated funds belonging to the client.

182. Through his knowing conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

183. By such conduct, the respondent violated Colo. RPC 8.4(c).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to refund fees to the client, and/or the client protection fund pursuant to C.R.C.P. 252.14(b), and/or provide restitution to third parties; the respondent be required to return client files (or other client property); the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

COURT USE ONLY

Case Number: 04PDJ088

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

#### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on January 12, 1998, and is registered upon the official records of this court, registration no. 29149. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 333 W. Hampden Ave., Suite 710, Englewood, CO 80110. A more recent address for respondent is 13523 West Virginia Ave., Lakewood, CO 80228.

### General Allegations

2. In February 2004, a dependency and neglect proceeding was commenced in Weld County District Court, styled *In the Interest of C.H. et al.*, case no. 04JV92 (the "D & N case"). The court ordered a preliminary investigation. The court also ordered the father to submit to a drug/alcohol evaluation, to comply with monitored sobriety and to have no contact with the minor child.

3. The father contacted respondent concerning representation in the D & N case. An attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct.

4. During a hearing on May 13, 2004, respondent phoned the court and requested a continuance based on his just having been retained. The court granted the request for continuance.

5. The continued hearing was held on May 21st. The father and respondent failed to appear. The court ordered the father to vacate the home. The court also entered a show cause order to respondent for his failure to appear. The show cause hearing was set for June 10, 2004, at 8:00 a.m. The court clerk mailed the show cause order to respondent.

6. On May 25, 2004, the court held another hearing. This time, the father and respondent appeared. The court directed respondent to enter his appearance in writing. Respondent failed to do so.

7. On June 10, the court held a show cause hearing on respondent's failure to appear on May 21st. Respondent failed to appear for this hearing as well. The court's minute order reflects the court's intention to contact "the appropriate licensing board", apparently a reference to the Office of Attorney Regulation Counsel ("OARC").

8. On June 17, 2004, OARC sent a certified mail letter to respondent at his last known address asking that he respond to the request for investigation. Someone signed for the certified mailing the next day. Respondent has not responded to the request for investigation.

9. On July 15, 2004, the court held an emergency hearing in the D & N case. The father was present; respondent was not. Respondent attempted to appear by telephone. The Magistrate declined to permit respondent to do this, including because respondent had not yet filed a written entry of appearance. The Magistrate allowed respondent to listen to the proceedings over the phone, but did not allow respondent to participate. The father was disadvantaged by this.

10. On July 22, 2004, at another hearing in the D & N case, respondent again failed to appear. Although he had been directed by the court to do so, respondent still had not filed a written entry of appearance. The father appeared and requested a continuance. The father offered the explanation that respondent's car had broken down. The court called respondent's cell phone number, but the respondent did not answer; the court could not leave a message because the voice mailbox was full. The court then ruled that there was not sufficient reason for a continuance. The court went forward with the hearing because the courtroom was packed with witnesses and the other parties were present. The father was disadvantaged by not having the respondent present and acting as his advocate.

### CLAIM I

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

11. Paragraphs 1 through 11 are incorporated herein as if fully set forth.

12. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

13. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects. Respondent failed to file

an entry of his appearance on behalf of his client, the father, despite having been directed to do so by the court. Respondent also failed to appear for hearings. The father was thereby disadvantaged, because his counsel did not participate in proceedings affecting the father's parental rights. The respondent was required to complete each of these specific tasks. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

14. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

15. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

16. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rule of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

COURT USE ONLY

Case Number: 04PDJ098

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

#### *Jurisdiction*

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on January 12, 1998, and is registered upon the official records of this court, registration no. 29149. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 12356 W. Ne-

vada Place, # 303, Lakewood, CO 80228. A more recent address is 13523 W. Virginia Ave., Lakewood, CO 80228.

#### *General Allegations—Robinson Matter*

2. In 1999, Vernon Robinson ("Robinson") and his ex-girlfriend sold a house to the Zlomkes. As part of the sale, Robinson and his ex-girlfriend promised to make certain repairs and improvements to the property. The ex-girlfriend did not make her share of the repairs. Robinson assumed this responsibility, incurring several thousand dollars in costs. Robinson thought about suing the ex-girlfriend to recover these expenses.

3. Robinson spoke to respondent about his claims against the ex-girlfriend. Respondent agreed to bring suit for a fee of $2,500. Robinson paid respondent this amount as of May 2000. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct.

4. At about the same time, the Zlomkes sued Robinson. *Zlomke v. Robinson*, Weld County District Court, Case No. 00CV1245. Robinson asked respondent to also take on the defense of the Zlomkes' claims. Respondent agreed to do so for an additional $1,500, which Robinson paid. Respondent answered and also asserted a third-party claim against the ex-girlfriend.

5. After this, respondent determined that he should associate with counsel more familiar with civil litigation. Respondent introduced Robinson to Kevin Pernell ("Pernell"—this lawyer was disbarred on March 15, 2004 for unrelated conduct). Respondent told Robinson that Pernell would be taking over the *Zlomke/Robinson* case at no extra charge to Robinson.

6. Robinson did not hear from Pernell for several months. Robinson attempted to contact respondent, without success. Robinson then received a call from his ex-girlfriend, advising him of continuing activity in the case. Robinson called respondent's office

and was told that respondent's whereabouts were unknown. Robinson then called the Office of Attorney Registration, and learned the respondent had moved to Idaho. Robinson wrote to respondent there. Respondent did not reply. On March 4, 2002, the court in the *Zlomke/Robinson* case entered default judgment against Robinson in the amount of $67,012.78.

7. Later, Robinson heard from respondent. Respondent claimed to have prepared a substitution of counsel and delivered it to Pernell for filing. Respondent promised to contact Pernell. Shortly thereafter, Pernell communicated with Robinson, including concerning a subpoena *duces tecum* that Robinson had received. Pernell then ceased communicating with Robinson.

8. Robinson learned that respondent had returned to Colorado and wrote to respondent at his new address. Respondent called Robinson and promised to nudge Pernell back into action. Pernell made sporadic contact with Robinson, but made no progress in the case.

9. In April 2004, Robinson filed a request for investigation with the Office of Attorney Regulation Counsel ("OARC"). Respondent promised to resume work on the *Zlomke/Robinson* case if Robinson withdrew his request. On April 13, 2004, Robinson and respondent entered into an Agreement to Provide Legal Services ("Agreement"), which provided that respondent would resume work on the *Zlomke/Robinson* case.

10. Respondent did not do so. Since about mid-May, respondent has not returned calls and letters from Robinson. After respondent was suspended in August, respondent failed to return Robinson's file of the case. Robinson has been disadvantaged by this.

### CLAIM I

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

11. Paragraphs 1 through 10 are incorporated herein as if fully set forth.

12. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

13. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter. By the Agreement, respondent undertook to resume his representation of Robinson in the *Zlomke/Robinson* case. Respondent failed to provide any representation in that case, including by taking steps to set aside the default judgment.

14. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

15. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

16. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM II

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter and Promptly Comply With Reasonable Requests for Information— Colo. RPC 1.4(a) ]**

17. Paragraphs 1 through 10 are incorporated herein as if fully set forth.

18. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

19. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects. Respondent did not respond to Robinson's calls and letters between mid-May and early August, when respondent was immediately suspended from the practice of law. Nor has respon-

dent communicated with Robinson thereafter. Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

20. The respondent knew or should have known that he had failed to communicate adequately with his client over an extended period of months.

21. The respondent's pattern and practice of failing to communicate with the client caused serious or potentially serious injury to the client.

22. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM III

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

23. Paragraphs 1 through 10 are incorporated herein as if fully set forth.

24. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

25. After respondent was immediately suspended in early August, 2004, and his ability to represent Robinson therefore ended, respondent failed and refused to return Robinson's file of the *Zlomke/Robinson* case.

26. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### General Allegations—Hartman Matter

27. David Leroy Hartman ("Hartman") was indicted by a federal grand jury in December 2003, including for the illegal transport of firearms. *United States of America v. Hartman,* United States District Court for the District of Colorado (Denver), Case No. 03–CR–582–ALL.

28. Hartman retained respondent. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct.

29. Hartman was arrested in February. On February 24, Hartman made his initial appearance before a Magistrate. Hartman told the court he was using private counsel.

30. On March 5, 2004, Hartman was arraigned. Respondent accompanied Hartman. Hartman entered a "not guilty" plea. On March 9, the Judge entered a Trial Preparation Conference Order. The Order set trial for April 26, 2004; trial was later rescheduled for May 24, 2004.

31. Respondent failed to conduct a thorough investigation. In particular, respondent failed to obtain a copy of a videotape of the incident that led to Hartman's being charged. The incident occurred at a convenience store, and was videotaped by the store's cameras. However, the videotape was erased 45 days later in the ordinary course of the store's business. Respondent failed to obtain a copy before this happened. In addition, respondent failed to take photographs of the car in which Hartman was stopped. The photos might have shown that it was not possible for the law enforcement officers to spot the illegal arms, giving rise to a suppression motion. However, the car was subsequently destroyed and that potential evidence is now lost.

32. According to Hartman, respondent did not visit him in prison and did not provide Hartman with copies of discovery materials.

33. On May 19, 2004, Hartman filed a request for investigation with OARC. On May 20, 2004, Hartman filed a letter with the federal district court informing the court of his request for investigation by OARC against respondent. Hartman requested that the court appoint new counsel for him.

34. On May 21, 2004, Hartman and respondent appeared for a trial preparation conference. The court granted Hartman's request to terminate respondent as his counsel. The court appointed the federal public defender as Hartman's counsel. The court vacated the trial preparation conference and the trial.

35. Subsequently, Ann England, a federal public defender, was appointed to represent Hartman. Ms. England endeavored without success to contact respondent concerning turnover of Hartman's file. In late July, Hartman called OARC asking for help. Hartman and Ms. England were in urgent need of the file, because trial was then set for August 13th. Undersigned counsel spoke to Ms. England, providing the limited contact information that OARC has for respondent. Ms. England contacted respondent; he promised to send her the file, but did not do so. Ms. England subsequently served a subpoena *duces tecum* upon respondent, seeking production of Hartman's file; respondent failed to respond to the subpoena.

### CLAIM IV

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

36. Paragraphs 27 through 35 are incorporated herein as if fully set forth.

37. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

38. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter. Respondent accompanied Hartman to his arraignment. However, according to Hartman, respondent did little else on the case. Respondent did not obtain or preserve important evidence, including the videotape of the incident and photographs of the car. Hartman was required to terminate respondent and request the appointment of a federal public defender.

39. The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

40. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

41. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

42. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM V

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]**

43. Paragraphs 27 through 35 are incorporated herein as if fully set forth.

44. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

45. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects. Respondent failed to provide Hartman with copies of discovery materials, which Hartman had requested.

46. Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

47. The respondent knew or should have known that he had failed to communicate adequately with his client over an extended period of months.

48. The respondent's pattern and practice of failing to communicate with the client caused serious or potentially serious injury to the client.

49. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM VI

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

50. Paragraphs 27 through 35 are incorporated herein as if fully set forth.

51. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

52. Respondent failed to turn over Hartman's file to the federal public defender, Ms. England, despite her requests including through subpoena.

53. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### General Allegations—Ivan Williams Matter

54. On February 26, 2004, Ivan Williams was arrested for assault and menacing. While he was in jail, his niece, Tanya Hoard–Nelson, sought to secure counsel for him. She contacted respondent. On March 2, 2004, the niece paid respondent $2,500 in cash to represent Mr. Williams in his assault case. Respondent promised to begin work on the matter the next day. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct.

55. However, respondent took no action. He did not visit Mr. Williams in jail, he did not assist in getting Mr. Williams out of jail, and he did not appear for or with Mr. Williams in court.

56. On March 23, 2004, the People filed their Information. The court entered a Temporary Restraining Order against Mr. Williams. *People v. Ivan Marshel Williams,* Denver District Court, Case No. 04CR1117. Mr. Williams stated that he was without counsel. The court appointed a Public Defender, Holly Lucas.

57. During March, April and May, the niece and Mr. Williams made numerous efforts to contact respondent and obtain the return of their money. Respondent avoided many of their calls. When respondent did answer, he promised to return most of the funds. Respondent never did so. Mr. Williams went to respondent's home on a number of occasions but never found him there.

58. On August 6, 2004, Mr. Williams pled guilty to third-degree assault and received a deferred sentence. Respondent has not repaid the retainer to date.

### CLAIM VII

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]**

59. Paragraphs 54 through 58 are incorporated herein.

60. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

61. The respondent agreed to provide services, including services relating to the criminal case, to Mr. Williams for $2,500.

62. Respondent defrauded the niece and Mr. Williams by stating to them he would represent Mr. Williams when respondent had no present intent to do so. Respondent did not earn any of the $2,500 retainer and converted the $2,500 retainer by refusing to

return it to the niece upon her and Mr. Williams' requests.

63. The respondent knew that he was keeping the $2,500 of funds he had not earned, knowing that such funds should be returned to his client because he had not earned them and knowing that keeping such funds was not authorized.

64. The respondent did not have permission from the niece or client to use her funds for his personal purposes.

65. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

66. Through his conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

67. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### General Allegations—Cindy Williams

68. Respondent represented Cindy Williams in her divorce case. *In re the Marriage of James Gordon Williams and Cindy Lee Williams,* Jefferson County District Court, Case No. 99DR092 (the "divorce case"). Respondent filed a motion for modification that was heard in June 2003. The court ruled against Ms. Williams.

69. Respondent offered to file a motion for reconsideration, if Ms. Williams would pay him a $2,000 retainer. Ms. Williams borrowed the money and gave it to respondent on July 9, 2003. They entered into an Agreement to Provide Legal Services ("fee agreement"), by which respondent agreed to represent Ms. Williams in connection with the motion to reconsider for a flat fee of $2,000. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct.

70. After not hearing from respondent for several months, and being unable to contact him by telephone (Ms. Williams believes respondent was screening and not taking her calls), Ms. Williams had her boyfriend call respondent. Respondent answered the call. The boyfriend requested respondent to return Ms. Williams' $2,000 retainer and withdraw as her counsel. Respondent agreed to do this.

71. Respondent did file withdrawal pleadings. However, respondent failed to sign the certificate of mailing on the motion and failed to sign the notification certificate. The district court declined to approve the withdrawal under these circumstances. The court directed respondent to file another motion, but respondent failed to do so.

72. Because Ms. Williams was without funds to obtain other counsel, and because respondent had not withdrawn as her counsel, she again asked respondent to assist with a modification motion in Spring 2004. Respondent promised to do so, and met with Ms. Williams and her children for that purpose. However, respondent did not prepare the motion, despite Ms. Williams' numerous efforts to contact him and press him for action.

73. On July 9, 2004, Ms. Williams wrote to respondent, demanding that he return her retainer, provide an accounting, and withdraw as her counsel. Respondent has not done so.

### CLAIM VIII

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

74. Paragraphs 68 through 73 are incorporated herein as if fully set forth.

75. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

76. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter. Despite having been engaged to prepare a motion for reconsideration of the district court's denial of the modification motion, and despite the passage of several months from the date of engagement until he was terminated, respondent failed to accomplish this task. Respondent also failed to prepare the modification motion that Ms. Williams asked him to draft in Spring 2004.

77. The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

78. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

79. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

80. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM IX

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter and Promptly Comply With Reasonable Requests for Information— Colo. RPC 1.4(a) ]

81. Paragraphs 68 through 73 are incorporated herein as if fully set forth.

82. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

83. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects. Respondent was not responsive to Ms. Williams'

many attempts to contact him. Ms. Williams was required to use the ruse of having her boyfriend call in order to get through to respondent. Respondent also was unresponsive to Ms. Williams attempts to contact him in Spring 2004.

84. Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

85. The respondent knew or should have known that he had failed to communicate adequately with his client over an extended period of months.

86. The respondent's pattern and practice of failing to communicate with the client caused serious or potentially serious injury to the client.

87. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM X

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

88. Paragraphs 68 through 73 are incorporated herein as if fully set forth.

89. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

90. Respondent has failed to return Ms. Williams' $2,000 unearned retainer, despite her having terminated his services and despite his having been immediately suspended in August.

91. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM XI

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]

92. Paragraphs 68 through 73 are incorporated herein.

93. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

94. Respondent converted Ms. Williams' $2,000 retainer by failing to return it to her after having performed no useful work on the matter and then having been terminated.

95. The respondent knew that he was keeping the $2,000 of funds he had not earned, knowing that such funds should be returned to his client because he had not earned them and knowing that keeping such funds was not authorized.

96. The respondent did not have permission from the client to use her funds for his personal purposes.

97. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

98. Through his conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

99. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### General Allegations—Mack Matter

100. *Background.* Thomas Mack ("Mack") is presently appealing a criminal conviction. *United States of America v. Thomas Ray Mack,* United States Court of Appeals for the Tenth Circuit, Case No. 04–1063. Respondent was appointed as Mack's counsel. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct.

101. As defense counsel, respondent was required to file a notice of his appearance, a docketing statement, a transcript order form, and a designation of the record. Respondent failed to do so, despite the court's reminders mailed to him over several months.

102. On June 14, 2004, the court issued an order requiring respondent to show cause in writing why he should not be stricken from the appeal and referred to "Attorney Discipline" for his failure to prosecute Mack's appeal. Respondent failed to respond to the show cause order. On July 30, 2004, the court entered an order striking respondent as Mack's attorney. The court also ordered respondent stricken from the list of attorney's eligible for appointments. The clerk sent copies of these orders to respondent by mail at 12356 W. Nevada Place, Lakewood, CO 80228, an address which respondent was using at the time.

103. Mack attempted to call respondent numerous times during this period, but was unable to reach him. Mack left messages, but respondent did not call back.

## CLAIM XII

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]

104. Paragraphs 100 through 103 are incorporated herein as if fully set forth.

105. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

106. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter. Respondent failed to prosecute Mack's appeal by filing required pleadings. Respondent's neglect caused the court to strike him as Mack's attorney.

107. The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

108. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

109. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

110. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XIII

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]**

111. Paragraphs 100 through 103 are incorporated herein as if fully set forth.

112. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

113. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects. Respondent failed to return Mack's calls and to keep Mack informed about respondent's progress (or lack thereof) on Mack's appeal.

114. Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

115. The respondent knew or should have known that he had failed to communicate adequately with his client over an extended period of months.

116. The respondent's pattern and practice of failing to communicate with the client caused serious or potentially serious injury to the client.

117. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XIV

**[A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c) ]**

118. Paragraphs 100 through 103 are incorporated herein as if fully set forth.

119. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

120. Respondent failed to respond to the court's show cause order, sent to him at his then office address.

121. By such conduct, the respondent violated Colo. RPC 3.4(c).

### *General Allegations—ARC Matter*

122. Ronnie Lee Vigil ("Vigil") retained respondent to represent him in United States District Court Case No. 03–CR–449–MK. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct.

123. Vigil's case was set for trial August 16, 2004. A trial preparation hearing was scheduled for August 11, 2004. As noted above, respondent was immediately suspended on August 2, 2004. Following his immediate suspension, respondent called chambers and informed Judge Krieger's secretary that he had been "disbarred". However, he did not file with the United States District Court for the District of Colorado the notice of his suspension required by Rule 251.28(d).

124. On the date of the trial preparation hearing, respondent phoned the court.

Judge Krieger found that doing so was not sufficient to discharge respondent's obligation to the client and the court.

125. On September 21, 2004, respondent was removed from the rolls maintained by the United States District Court for his failure to report his immediate suspension.

### CLAIM XV

**[A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c) ]**

126. Paragraphs 122 through 125 are incorporated herein as if fully set forth.

127. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

128. Rule 251.28(d)(2) requires that an immediately suspended attorney file with the Supreme Court an affidavit showing *inter alia* that "the attorney has notified every other jurisdiction before which the attorney is admitted to practice law of the order entered against the attorney". Respondent is presumed to know the Rules of Civil Procedure, including Rule 251.28. *In re Attorney C*, 47 P.3d 1167, fn. 12 (Colo.2002).

129. Notwithstanding the Colorado Supreme Court having sent the immediate suspension order to respondent by mail and respondent having learned of his suspension, respondent did not comply with Rule 251.28(d). Respondent did not file the required affidavit with the Colorado Supreme Court and did not properly notify the United States District Court of his suspension. Nor did respondent notify his client or opposing counsel.

130. By failing to comply with Rule 251.28, respondent violated Colo. RPC 3.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### *General Allegations—Ramirez Matter*

131. As noted above, respondent was immediately suspended on August 2, 2004. The Colorado Supreme Court mailed the immediate suspension order to respondent. On August 18, 2004, respondent took payment of $5,000 from Ramirez as a retainer for representing her brother, Luis Dominguez, who

had just been arrested. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct. Despite Ramirez' extensive efforts to recover the retainer, respondent has not returned the $5,000.

### CLAIM XVI

**[A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c) ]**

132. Paragraph 131 is incorporated herein as if fully set forth.

133. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

134. The Colorado Supreme Court's August 2, 2004 Order of Suspension suspended respondent from the practice of law, effective immediately. Respondent disobeyed the immediate suspension order by agreeing to represent Luis Dominguez after the effective date of the Order.

135. By violating the Supreme Court's Order, respondent violated Colo. RPC 3.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XVII

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]**

136. Paragraph 131 is incorporated herein.

137. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

138. Respondent defrauded Ramirez by taking $5,000 from her without a present intent to represent her brother, Luis Dominguez. Respondent knew he could not represent the brother, because respondent had been immediately suspended from the prac-

tice of law. Respondent knowingly converted Ramirez' $5,000 by taking it from her under false pretenses and refusing to return it.

139. The respondent did not have permission from the client to use her funds for his personal purposes.

140. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

141. Through his conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

142. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to refund fees to the client, and/or the client protection fund pursuant to C.R.C.P. 252.14(b), and/or provide restitution to third parties; the respondent be required to return client files (or other client property); the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

COURT USE ONLY

Case Number: 04PDJ105

## COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on January 12, 1998, and is registered upon the official records of this court, registration no. 29149. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's

most recent known address is 6430 Garrison St., Arvada, CO 80004. Respondent has had a number of prior addresses over the past year, including a residence address of 2230 S. Braun Ct., Lakewood, CO 80228.

### General Allegations

### Lanning Matter

2. Respondent was immediately suspended on August 2, 2004.

3. On August 16, 2004, respondent entered into a retainer agreement with Patrick Lanning ("Lanning"), whereby respondent agreed to provide legal representation to Lanning in his criminal case in return for a $5,000 flat fee. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that he would provide the services in accordance with the Colorado Rules of Professional Conduct. Respondent did not reveal to Lanning that respondent was suspended at the time.

4. Lanning paid respondent $1,000 on August 16th. Lanning claims he paid respondent an additional $1,000 on September 3rd.

5. Thereafter, Lanning was not able to contact respondent. He learned that respondent was in jail. Lanning has not been able to contact respondent or to recover his money from respondent.

### CLAIM I

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation—Colo. RPC 8.4(c) ]

6. Paragraphs 1 through 5 are incorporated herein.

7. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

8. At the time respondent purported to take on Lanning's case, respondent knew that he was suspended and therefore unable to practice law. This is evidenced, *inter alia,* by the fact that respondent called the cham-

bers of a federal district court judge after his suspension and told the judge's clerk that respondent was no longer able to practice law.

9. Respondent defrauded Lanning by stating that he could represent Lanning at a time when respondent was suspended. The respondent never corrected this false statement.

10. Respondent intended that Lanning rely upon respondent's false statements, including by paying respondent monies.

11. Lanning justifiably relied upon respondent's words and conduct, including by paying a retainer to respondent.

12. Respondent converted Lanning's funds by taking them under false pretenses and keeping them. The respondent agreed to provide services, including services relating to the criminal case, to Lanning for a flat fee of $5,000. The respondent did not earn the retainer he had been paid and did not complete the services for which he had been hired.

13. By failing to return the retainer Lanning had paid to the respondent when he had not earned such fees because he did not complete the services, the respondent exercised dominion or ownership over such funds held for Lanning's benefit. The respondent knew that he was keeping the retainer he had not earned, knowing that such funds should be returned to his client because he had not earned them and knowing that keeping such funds was not authorized. The respondent did not have permission from the client to use his funds for respondent's personal purposes. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated Lanning's funds. Through his conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

14. By such conduct, the respondent violated Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

### [A Lawyer Shall Not Practice Law in a Jurisdiction Where Doing So Violates the Regulations of the Legal Profession in that Jurisdiction—Colo. RPC 5.5(a) ]

15. Paragraphs 1 through 5 are incorporated herein.

16. Colo. RPC 5.5(a) provides that a lawyer shall not practice law in a jurisdiction where doing so violates the regulations of the legal profession in that jurisdiction.

17. At the time the client retained the respondent, the respondent was under suspension from the practice of law for failing to cooperate with investigations into his conduct.

18. The respondent knew that he was under administrative suspension when he entered into this new attorney-client relationship because he had been served with notice of his suspension. Respondent also had acknowledged his suspension to a federal district court judge in an unrelated case.

19. Notwithstanding respondent's knowledge that he had been suspended, respondent purported to agree to represent Lanning in Lanning's criminal case and took a retainer from Lanning.

20. By such conduct, the respondent violated Colo. RPC 5.5(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### ARC Matter

21. *Respondent Retained.* On May 24, 2004, Sirena L. Edenfield ("Edenfield"), a minor, received a summons for harassment from a police officer in Wheat Ridge. She was directed to appear in Wheat Ridge Municipal Court on June 28th. Thereafter, Edenfield retained respondent; her parents paid respondent $500. On June 28, Edenfield, her mother and respondent appeared. Edenfield received an advisement of her rights. The matter was continued until August 9, 2004. Respondent did not obtain discovery from the prosecutor.

22. *Respondent Fails to Appear for Arraignment.* As noted above, respondent was immediately suspended on August 2, 2004. At the continued arraignment on August 9th, respondent appeared by phone rather than in person. The court granted a continuance of the arraignment until September 13th. Respondent did not notify either the court or his client about his suspension.

23. On September 13, 2004, Edenfield and her mother appeared for Edenfield's arraignment. Respondent did not appear. The court continued Edenfield's arraignment because respondent had failed to appear.

24. The court also issued a show cause order to respondent. The court directed respondent to appear on September 27, 2004, to explain his failure to appear in court on September 13th. The court mailed the show cause order to respondent's last known address: 13523 W. Virginia Ave., Lakewood, CO 80228.[5]

25. *Successor Counsel.* On September 22, 2004, successor counsel, Peter A. Garin, Esq., filed an entry of appearance and motion to continue. The motion recites the unsuccessful efforts of Mr. Garin and the Edenfield family to contact respondent.

26. Respondent failed to appear for his show cause hearing on September 27, 2004. On September 30, 2004, the court issued another show cause order, requiring respondent to appear on October 13, 2004. The court mailed the show cause order to 12356 W. Nevada Place, #303, Lakewood, CO 80228, the address respondent had listed on his entry of appearance.[6]

27. Respondent failed to appear for his show cause hearing on October 13, 2004. The court issued a bench warrant.

28. Edenfield's case is currently set for trial on November 22, 2004.

29. *Injury.* Because of respondent's failure to inform the court and his client of his immediate suspension, the court was required continue Edenfield's arraignment. The court further was required to issue show cause orders and a bench warrant for respondent's arrest. Edenfield was delayed in obtaining competent counsel and in resolving her case.

### CLAIM III

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]**

30. Paragraphs 21 through 29 are incorporated herein as if fully set forth.

31. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

32. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects. Respondent failed to inform Edenfield and her mother that respondent had been immediately suspended and therefore was unable to represent Edenfield after August 2, 2004.

33. The respondent knew or should have known that he had failed to communicate adequately with his client over an extended period of weeks.

34. The respondent's pattern and practice of failing to communicate with the client caused injury or potential injury to the client.

35. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

---

**5.** There is some possibility respondent did not receive the Order to Show Cause. Respondent may have been in the Jefferson County jail at the time. The Office of Attorney Regulation Counsel served respondent with an unrelated citation to show cause at the jail on September 21, 2004.

**6.** As noted above, it is possible that respondent did not receive this, because respondent probably remained incarcerated in the Jefferson County jail at the time. In addition, it appears respondent had moved from the W. Nevada address.

## CLAIM IV

**[A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c) ]**

36. Paragraphs 21 through 29 are incorporated herein as if fully set forth.

37. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

38. On September 13 and 20, 2004, the court ordered respondent to appear and show cause why he had not appeared for Edenfield's arraignment. Respondent failed to respond to the court's show cause orders, sent to him at his last known addresses. Upon information and belief, respondent knew or reasonably should have known of the court's show cause orders.

39. Respondent also failed to comply with C.R.C.P. 251.28, which requires a suspended attorney to notify the court and his client about his suspension. As an attorney, respondent is presumed to know the Colorado Rules of Civil Procedure, including Rule 251.28.

40. No exception exists under Colo. RPC 3.4(c) for the respondent's knowing failure to respond to the court's show cause orders and knowing failure to comply with Rule 251.28.

41. By such conduct, the respondent violated Colo. RPC 3.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM V

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation—Colo. RPC 8.4(c) ]**

42. Paragraphs 21 through 29 are incorporated herein.

43. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

44. The respondent agreed to provide services, including services relating to the criminal case, to Edenfield. Respondent took a retainer of $500.

45. By failing to appear at the September 13, 2004 arraignment in Edenfield's criminal matter, the respondent did not earn the fees ($500) he had been paid and did not complete the services for which he had been hired.

46. By failing to return the $500 Edenfield's parents had paid to the respondent when he had not earned such fees because he did not complete the services, the respondent exercised dominion or ownership over such funds held for Edenfield's benefit.

47. The respondent knew that he was keeping the $500 of funds he had not earned, knowing that such funds should be returned to his client because he had not earned them and knowing that keeping such funds was not authorized.

48. The respondent did not have permission from the client to use the funds for his personal purposes.

49. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

50. Through his conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

51. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to refund fees to the client, and/or the client protection fund pursuant to C.R.C.P. 252.14(b), and/or provide restitution to third parties; the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.